```
         IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                HOT SPRINGS DIVISION
```

CHERYL REED                                          PLAINTIFF

    v.                Case No. 6:11-CV-6020

COLLEGE OF THE OUACHITAS                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Partial Summary Judgment (doc. 13), Brief in Support (doc. 14), and Statement of Undisputed Material Facts (doc. 15).  For the reasons set out below, Defendant's Motion for Partial Summary Judgment (doc. 13) is **GRANTED**.

### I. Procedural Background

On March 23, 2011, Plaintiff Cheryl Reed filed her Complaint (doc. 1) against her former employer Defendant College of the Ouachitas (formerly known as Ouachita Technical College) alleging she was discriminated against on the basis of her race and in retaliation for protected activities.  Plaintiff brings her action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*; Title V of the Americans with Disabilities Act, 42 U.S.C. 12201 *et seq.*; 42 U.S.C. §§ 1981 and 1983, the U.S. Constitution; and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq*.

On May 6, 2011, Defendant filed its Answer (doc. 5) and on May 27, 2011, Defendant filed its Amended Answer (doc. 7)

denying the allegations of wrongdoing. On February 21, 2012, Defendant filed its Motion for Partial Summary Judgment (doc. 13) and supporting materials (docs. 14 & 15). Defendant moves for summary judgment on all claims except Plaintiff's claims brought under Title VII of the Civil Rights Act contending they are barred by Eleventh Amendment sovereign immunity. Defendant also argues that it is not a "person" subject to suit under Section 1983 and that Section 1981 and Section 1983 claims should also be dismissed for that reason.

On March 6, 2012, Plaintiff filed a motion for extension of time to file her Response (doc. 16). On March 12, 2012, the Court entered a text only order granting Plaintiff's motion and extended the response deadline to March 16, 2012. No response from the Plaintiff to Defendant's Motion for Partial Summary Judgment has been received by the Court, and no further motions to extend the response deadline has been received.[1]

**II. Standard of Review**

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,*

---

[1] Local Rule 56.1(c) provides that "[a]ll material facts set forth in the statement filed by the moving party pursuant to paragraph (a) **shall** be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b)." (emphasis added).

475 U.S. 574, 586-87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998) (*citing Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)).

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56*, must set forth specific facts showing that there is a genuine issue for trial. *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998) (*citing Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir. 1981)). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Furthermore, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th

Cir. 1996) (*quoting Crain v. Bd. of Police Comm'rs,* 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

### III. Uncontroverted Facts

The following facts are deemed uncontroverted.[2]

1. Plaintiff Cheryl Reed, a white female, taught math courses at Defendant College of the Ouachitas. (Defendant's Uncontroverted Fact #1)

2. Plaintiff reported directly to P.S.[3], a white male, who served as the math department chair and as the general education division chair for the College. (Defendant's Uncontroverted Fact #2)

3. P.S. reported to the Vice-President of Instruction, Dr. S.K., a white female, until Dr. S.K. left the College and was replaced by Dr. M.E. (Defendant's Uncontroverted Fact #3)

4. Dr. M.E. reported directly to the President of the College, Dr. B.B., a white male. (Defendant's Uncontroverted Fact #4)

5. Plaintiff alleges that from at least 2008 onward, she voiced objections to what she perceived as racially-discriminatory employment practices at College of the Ouachitas. (Defendant's Uncontroverted Fact #5)

---

[2] Defendant's Statement of Undisputed Material Facts (doc. 15) submitted in support of its Motion for Summary Judgment sets forth twenty-nine uncontroverted material facts. Because Plaintiff failed to respond to Defendant's motion, those facts are deemed admitted. (See Local Rule 56.1(c) of the Local Rules for the Western District of Arkansas.)
[3] Initials are used in place of the individual's name.

6. Among her complaints, Plaintiff claims that she routinely made inquiries with Dr. S.K. or P.S. as to why the College did not hire more minorities for open positions, and she claims that she also aired this concern in division faculty meetings. (Defendant's Uncontroverted Fact #6)

7. Plaintiff testified that she questioned P.S. and Dr. S.K. when the school hired a white employee to fill the same vacancy on two occasions rather than promoting M.J., a black employee and applicant for promotion, into that position. (Defendant's Uncontroverted Fact #7)

8. Plaintiff alleges that she complained about P.S. to Dr. S.K. and Dr. B.B., alleging that P.S. had made racially-derogatory statements. (Defendant's Uncontroverted Fact #8)

9. Plaintiff alleges that she complained to Dr. S.K. that P.S. had made sexually-harassing comments to College of the Ouachitas students and employees. (Defendant's Uncontroverted Fact #9)

10. Plaintiff alleges that she "frequently advocated for students with disabilities, alleging that accommodations were not being made for the students." (Defendant's Uncontroverted Fact #10)

11. As an example of her disability advocacy, Plaintiff testified in her deposition that she attempted to help three particular students either to acquire modifications to

facilities to allow access or to utilize modifications to the testing procedures to accommodate a learning disability. (Defendant's Uncontroverted Fact #11)

12. Plaintiff testified that her advocacy required her to make complaints to Dr. S.K. about P.S.'s alleged resistance to providing modifications. (Defendant's Uncontroverted Fact #12)

13. In October of 2009, Plaintiff received a written "letter of counsel" from Dr. M.E. about Plaintiff's relationship with a College of the Ouachitas student that resulted in a public altercation between Plaintiff's estranged husband and the student at a gas station near campus. (Defendant's Uncontroverted Fact #13)

14. The student referred to in Dr. M.E.'s October 2009 letter is black. (Defendant's Uncontroverted Fact #14)

15. Plaintiff received a written "letter of counsel" from P.S., dated October 21, 2009, in which P.S. cited Plaintiff for alleged tardiness on multiple occasions. (Defendant's Uncontroverted Fact #15)

16. Plaintiff received a written "letter of counsel" from P.S., dated January 7, 2010, citing Plaintiff for allegedly text messaging and talking on her cell phone during class. (Defendant's Uncontroverted Fact #16)

17. Plaintiff received a "letter of counsel" from P.S., dated February 1, 2010, in which P.S. cited Plaintiff for

deviating from departmental grading policy and assigning a student a grade of "B" in two sections of a math lab course for lessons the student had not attempted. (Defendant's Uncontroverted Fact #17)

18. In a letter dated April 2, 2010, Dr. M.E. notified Plaintiff that her teaching contract would not be renewed for the coming school year. (Defendant's Uncontroverted Fact #18)

19. In Dr. M.E.'s April 2, 2010 letter, he cited the four letters of counsel identified in paragraphs 13-18 of this Statement of Undisputed Material Facts as grounds for the non-renewal. (Defendant's Uncontroverted Fact #19)

20. Plaintiff appealed the non-renewal decision, which led to a hearing before the College's "Professional Standards Committee." (Defendant's Uncontroverted Fact #20)

21. The Professional Standards Committee recommended to College of the Ouachitas' then-president Dr. B.B. that he should remove one of the bases for the non-renewal decision, but it did not recommend overturning the decision. (Defendant's Uncontroverted Fact #21)

22. Dr. B.B. issued an April 14, 2010 letter to Plaintiff, accepting the Committee's recommendation to uphold the non-renewal of Plaintiff's contract but eliminating the citation to Plaintiff's relationship with a student as a basis for non-renewal. (Defendant's Uncontroverted Fact #22)

23. With respect to the written "letters of counsel," Plaintiff alleges that after Dr. S.K. left the College, "[P.S.] began building a record of complaints against [her] in retaliation for her prior protected activity – opposing racially discriminatory employment practices, [P.S.'s] sexually hostile environment, and [P.S.'s] inappropriate comments referencing disabled students and faculty." (Defendant's Uncontroverted Fact #23)

24. Plaintiff alleges that "[o]ther math instructors who had not engaged in protected activity or who did not have a close relationship with a member of another race have made similar grade concessions on behalf of students but were not subjected to any reprimand or non-renewal of their contracts." (Defendant's Uncontroverted Fact #24)

25. Plaintiff claims that "[b]ut for [her] open relationship with a black person and or her protected activity opposing various race, sex, and disability discrimination, she would never have been recommended for non-renewal based on" the matters cited in her non-renewal notice other than her relationship with a student. (Defendant's Uncontroverted Fact #25)

26. College of the Ouachitas denies that it retaliated against Plaintiff or discriminated against her in any way. (Defendant's Uncontroverted Fact #26)

27. Plaintiff filed a charge of discrimination with the EEOC on or about July 29, 2010, and she filed this lawsuit within 90 days of receiving her "right to sue" letter. (Defendant's Uncontroverted Fact #27)

28. College of the Ouachitas is a member of the "Arkansas Technical and Community College System." See Ark. Code Ann. § 6-53-201 ("All two-year institutions and their courses and programs within the jurisdiction of the Arkansas Higher Education Coordinating Board shall be identified and administered as the Arkansas Technical and Community College System."). (Defendant's Uncontroverted Fact #28)

29. College of the Ouachitas does not receive any funding from a millage and has not received any such funding during the time period relevant to this lawsuit. (Defendant's Uncontroverted Fact #29)

**IV. Discussion**

The Eleventh Amendment provides States and their agencies with immunity from suits brought by its citizens and by citizens of other states. *Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) (*citing Hadley v. N. Ark. Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996)). "While state universities and colleges almost always enjoy Eleventh Amendment immunity, such immunity is not so apparent for community colleges due to local political and financial involvement in community colleges."

*Griner v. Southeast Comm. College*, 95 F.Supp.2d 1054, 1057 (D. Neb. 2000) (*quoting Hadley* at 1438 (8th Cir. 1996)) (internal quotations omitted). To determine whether sovereign immunity applies, the Eighth Circuit Court of Appeals instructs district courts to "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state. Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury." *Id.* at 1439 (citations omitted).

Defendant argues the governing statutes demonstrate that the College of the Ouachitas is a part of a comprehensive community and technical college system that is coordinated and funded by the State and therefor a judgment against Defendant in this case would be indistinguishable from a judgment against the state itself. Specifically, Defendant contends it is a member of the "Arkansas Technical and Community College System" and that the Arkansas Higher Education Coordinating Board was designated as the coordinating body of the System. Ark. Code. Ann. § 6-53-201. Defendant maintains that the Coordinating Board's role entails presenting a single budget report to the General Assembly and Governor, including recommendations for separate appropriations to each institution within the system.

Defendant contends that the legislature created the "Ouachita Technical College Fund" on the books of the State Treasurer, the State Auditor, and the State's Chief Fiscal Officer "to be used for the maintenance, operation, and improvement of the Ouachita Technical College". Ark. Code. Ann. § 19-5-311(e). Defendant argues the legislature expressly treats state-supported institutions of higher learning as state agencies for purposes of budgeting and regulating the expenditures of cash funds. Ark. Code. Ann. § 19-4-801 to 802. Defendant also argues that while under Arkansas law technical and community colleges are permitted to seek additional operations funding through a locally imposed millage, Ark. Code Ann. § 6-61-602, Defendant does not receive any funding from millage. Finally, Defendant argues that the Coordinating Board is also tasked with recommending and reviewing proposals for the establishment of curricula and for major changes in curricula within the system. Ark. Code Ann. § 6-53-203.

The Court is cognizant that the question whether a community college is entitled to Eleventh Amendment sovereign immunity tends to be difficult and very fact specific. *See Hadley* at 1438-39. However, the uncontroverted material facts relating to Defendant's powers and characteristics, local autonomy and control, and funding demonstrate that Plaintiff's claim against Defendant "is in reality a suit against the

state." *Hadley* at 1440 (citing *Sherman v. Curators of University of Missouri*, 16 F.3d 860, 863 (8th Cir. 1994)). The Plaintiff has offered no evidence to support a different conclusion and has failed to respond to the specific facts set forth in Defendant's Summary Judgment Motion. Defendant's uncontroverted facts set forth in its summary judgment motion are supported through specific citations to Plaintiff's deposition testimony and the declaration of Dr. Roger Croom, Vice President for Finance and Administration at the College of the Ouachitas. The Court therefore finds that Defendant, an agency of the State enjoys Eleventh Amendment immunity and no waiver or abrogation of the State's immunity applies here. *Id. Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-100; *Burk v. Beene*, 948 F.2d 489, 492-94 (8th Cir. 1991).

Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims against Defendant are dismissed with prejudice. *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 890 (8th Cir. 2005); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991); see also *Arkansas Tech University v. Link*, 341 Ark. 495 (2000) (Only "persons" can be sued under § 1983 and ACRA, and a state or its agencies are not "persons"). Plaintiff's ACRA claims against Defendant are dismissed with prejudice. *See* Ark. Code Ann. § 16-123-104 ("Nothing in this subchapter shall be construed to waive the

sovereign immunity of the State of Arkansas."). Plaintiff's claims under Title V of the ADA are dismissed with prejudice. *See Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001) (holding Supreme Court precedent supported a conclusion that Congress may not abrogate the states' Eleventh Amendment immunity from claims brought pursuant to Title V of the ADA.).

**V. Conclusion**

Accordingly, Defendant's Motion for Partial Summary Judgment (doc. 13) is **GRANTED**. Plaintiff's claims brought pursuant to 42 U.S.C. § 1981 are **DISMISSED WITH PREJUDICE,** Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.** Plaintiff's claims brought pursuant to ACRA are **DISMISSED WITH PREJUDICE.** Plaintiff's claims brought pursuant to Title V of the ADA are **DISMISSED WITH PREJUDICE.**

This matter remains set for a jury trial on Plaintiff's claims brought pursuant to Title VII of the Civil Rights Act to begin on Monday, May 21, 2012, in Hot Springs. Pretrial disclosure sheets are due 30 days before trial and Proposed Jury Instructions shall be submitted 14 days before trial, as set out in the Final Scheduling Order.

IT IS SO ORDERED this 23rd day of April, 2012.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge